UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DION ANDRES RUSSELL, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>JUVENILE COURT OF KINGSPORT, )<br>TENNESSEE, SULLIVAN COUNTY )<br>JAIL, LINDA ONKOTZ, and SANDRA S. )<br>SPIVEY, )<br>)<br>*Defendants.* ) | No. 2:15-cv-13-JRG-DHI |

## MEMORANDUM and ORDER

This is a *pro se* civil rights fee-paid complaint for injunctive relief and damages pursuant to 42 U.S.C. § 1983, filed by a prisoner in the Sullivan County Detention Center[1], [Doc. 1]. However, for the reasons stated below, process shall not issue and this action will be **DISMISSED**.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). *See also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

---

[1] Since filing this case, plaintiff has been released from confinement, [Doc. 3, Notice of Address Change].

Under the Prison Litigation Reform Act (PLRA), district courts must screen prisoner complaints and *sua sponte* dismiss those which are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g., Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

> Responding to a perceived deluge of frivolous lawsuits, and, in particular, frivolous prisoner suits, Congress directed the federal courts to review or "screen" certain complaints sua sponte and to dismiss those that failed to state a claim upon which relief could be granted, that sought monetary relief from a defendant immune from such relief, or that were frivolous or malicious.

*Id*. at 1015-16 (6th Cir. 1999) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A).

In screening this complaint, the Court bears in mind that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, the pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citations and internal quotation marks omitted).

Conclusory allegations and unwarranted inferences from alleged facts need not be accepted as true. *Newberry v. Silverman*, No. 14-3882, 2015 WL 3422781, at *2 (6th Cir. May 29, 2015). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [28 U.S.C. § 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)*." Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

2

The complaint, according to plaintiff, alleges two claims: one for violations of his rights during proceedings in the Juvenile Court system in Kingsport, Tennessee, and one concerning his incarceration upon a mittimus issued by the Juvenile Court. The Court examines each claim in turn under the relevant standards.

1. **Claim One**

   A. **Plaintiff's Allegations**

The factual allegations which follow are offered in support of the first claim. Documents from the Juvenile Court are confusing and contain misinformation. For example, the heading of "General Sessions" is stricken through on the mittimus and is replaced by the handwritten word "Juvenile." Also, the Child Custody Court and the Child Support Court have different rules on contempt and both state courts have manipulated the rules and exhibited bias in the courtroom towards plaintiff.

Furthermore, following plaintiff's incarceration on a contempt charge, the Child Support Court was supposed to refer him to the Child Custody Court to establish a parenting plan, but while the Child Support Court gives him a monthly court date to ascertain whether plaintiff has paid his child custody payments and while the Child Custody Court establishes a parenting plan, the Child Custody Court never follows through to see if the plan is working.

Plaintiff is required to drive to Blountville, Tennessee, for his court dates, whereas some individuals which whom he was incarcerated have court dates set in Kingsport. This imposes a hardship on plaintiff, who had his driving privileges suspended for child support arrearage. But when he complained to defendant Linda Onkotz, the Child Support Magistrate, her demeanor towards him was aggressive. It became more aggressive and also humiliating after several

unpleasant exchanges he had with her during those court proceedings and the proceedings which occurred subsequently.

Defendant Sandra S. Spivey, an Assistant Attorney General who is involved in the proceedings, also displays rude and intimidating conduct towards plaintiff and treats him like the scum of the earth, which of course humiliates him. She and Magistrate Onkotz subject men to mass incarceration, which disrupts their relationships with their children and which is not in the best interests of those children and their families.

B. Law & Analysis

At the outset, one of the defendants involved in this claim is not subject to suit under § 1983. The lead defendant, the Juvenile Court of Kingsport, Tennessee, is a state court, and the Sixth Circuit has held that a state court is not a "person" subject to suit under § 1983. *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir.1997) (citing *Mumford v. Zieba*, 4 F.3d 429, 435 (6th Cir.1993), in turn citing *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir.1988)). Accordingly, any allegations against the Juvenile Court of Kingsport, Tennessee, fail to state a claim upon which relief may be granted.

The other two defendants tied to the allegations in this claim enjoy immunity from a suit for damages because all their challenged actions were taken within the scope of their jurisdiction, duties, and functions. A judicial officer, such as Child Support Magistrate Linda Onkotz, enjoys absolute immunity from lawsuits for monetary damages while performing her judicial functions. *Mireles v. Waco,* 502 U.S. 9, 9-10 (1991) (per curiam); *Mann v. Conlin*, 22 F.3d 100, 103, (6th Cir. 1994). Scheduling dates and venues for court proceedings lies within the scope of Magistrate Onkotz's jurisdiction. While the alleged aggressive and rude demeanor of this

4

judicial officer is unfortunate, it does not remove her cloak of judicial immunity. Therefore, defendant Onkotz has judicial immunity from the claims for damages in this lawsuit.

Likewise, it is well-settled that prosecutors, acting within the scope of their duties in initiating and pursuing a criminal prosecution and presenting the state's case, enjoy absolute immunity from a civil suit for damages. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). There is nothing to indicate that Assistant Attorney General Sandra Spivey was doing anything except performing the duties of her office in prosecuting a child support arrearage case and, thus, she enjoys prosecutorial immunity from damages sought in this lawsuit. *See Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003) (citing *Mowbray v. Cameron Co., Tex.*, 274 F.3d 269, 276 (5th Cir. 2001)). Defendant Spivey's alleged rude and intimidating conduct, if true, is unprofessional but it does not affect her prosecutorial immunity.

Therefore, the claims against defendants Onkotz and Spivey fail, based on their absolute immunity from this action for damages.

To the extent that plaintiff's incarceration stems from findings or rulings made in his child support case, his request for release from confinement cannot be brought in this Court under the aegis of a § 1983 suit, but must be made in a petition for a writ of habeas corpus under 28 U.S.C. § 2254, in which he may challenge his conviction, after he exhausts his state court remedies. *See* 28 U.S.C. § 2254(b)(1); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) (observing "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments"); *Rose v. Lundy*, 455 U.S. 509 (1982) (finding that federal claims must be completely exhausted in the state courts before seeking federal habeas corpus relief); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (a claim attacking the duration of a state prisoner's confinement must be raised in a § 2254 petition.

5

### 2. Claim Two

#### A. Plaintiff's Allegations

The first contention in this bundle of allegations is that plaintiff's multiple requests to be allowed access to the law library at the Sullivan County jail were ignored or denied. Once, when plaintiff wrote to the Administrative Lieutenant asking to go to the law library and for assistance in filing a civil rights action regarding his confinement, the Lieutenant's only response was to return to plaintiff the letter, to which was stapled a § 1983 form complaint. Other letters and grievances plaintiff authored similarly were ignored.

Plaintiff asserts that on July 26, 2014, a cellmate made racist jokes about the nurse and plaintiff told him to leave the cell. Officers Pritz and Ball pulled both inmates from the cell, discussed the matter with them, told plaintiff to pack his belongings, moved him to y-cell for one minute, then moved him to u-cell. In u-cell, plaintiff was approached by inmates on whose bodies were displayed swastika tattoos and who told him either to get on the door or to fight. One of those inmates commented that the officers must be really mad at plaintiff for them to place him in u-cell. Plaintiff kicked the door to signal his distress until an officer responded.

The officer removed plaintiff from u-cell but placed him in the "hole," where he slept on the floor that night. The next morning, plaintiff asked for cleaning supplies to clean the dirty cell, but none were furnished. The following day, plaintiff and his cell-mate filled out grievances and five minutes after they slid them beneath the door, cleaning supplies were delivered to the cell. While plaintiff was in the hole, his food was tampered with and he refused to eat.

Plaintiff was moved back to y-cell, where the oatmeal on his breakfast tray had a roach in it. Plaintiff sent it back to the kitchen, but the replacement tray also contained a roach. Plaintiff filed grievances concerning this matter also.

6

On October 5, 2014, plaintiff received a letter from his attorney, informing him that counsel had been to the jail to visit him on a couple of occasions, but that the officers did not bring plaintiff out to meet with counsel.

Plaintiff alleges that Officers Ball, Ramsey, and Pritz have intimidated him and have not attended to his safety needs. Officer Ball knew when he placed plaintiff in u-cell that black or darker-skinned people could not live in that cell because the officer had done the same thing to another Native American inmate. Furthermore, every cell in the jail has swastikas and other gang-related paintings on the walls and doors. The shower walls have black mold on them, which has been covered up by plastic. Also, plaintiff had a sore under his nose for a month that was hard to heal.

### B. Law & Analysis

Once again, the defendant against whom these allegations are being made is not subject to suit under § 1983. The Sullivan County jail is a building and not a suable entity within the meaning of 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688–90 and n.55 (1978) (for purposes of a § 1983 action, a "person" includes individuals and "bodies politic and corporate"); *De La Garza v. Kandiyohi County Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (stating that neither a county jail nor a sheriff's department is a suable entity); *Marbry v. Corr. Medical Servs.*, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that "the Shelby County Jail is not an entity subject to suit under § 1983") (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Cage v. Kent County Corr. Facility*, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983.").

7

Though plaintiff has made allegations against Officers Ball, Ketron, Hulse, Ramsey, and Pritz, he has not named these individuals as defendants. But even if these officers had been named as defendants, plaintiff would not have stated a claim against them.

Plaintiff's allegations concerning denials of access to the jail law library could not proceed in any event. It is true that prisoners have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), but they do not have an abstract, freestanding right to a law library in prison. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim for denial of access to the courts, a plaintiff must show prejudice, such as the late filing of a court document or the dismissal of a non-frivolous claim, resulting from the inadequate jail law library. *Pilgrim v. Littlefield,* 92 F.3d 414, 415-16 (6th Cir. 1996) (citing *Lewis*, 518 U.S. at 351).

While plaintiff maintains that he asked for help in filing a civil rights suit concerning jail conditions, he was not hindered in this regard since he has filed the instant § 1983 case, complaining about those conditions. Thus, there is no allegation of actual prejudice.

Complaints about jail conditions fall within the scope of the "Cruel and Unusual Punishments" provision in the Eighth Amendment, which prohibits conditions which involve the wanton and unnecessary infliction of pain and result in the serious deprivation of basic human needs. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). An Eighth Amendment claim is comprised of two elements: an objective element, which means that a plaintiff has alleged a sufficiently serious deprivation, and a subjective element, which requires that he demonstrate that a defendant possessed a state of mind of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison condition will be sufficiently serious so as to satisfy the first component of an Eighth Amendment claim if it denies a plaintiff "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 47-48; *Tillery v. Owens*, 907 F.2d 418, (3rd Cir. 1990)

8

("Although prisoners are, undeniably, sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy as to be itself a punishment").

However, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). When prison conditions are concerned, an extreme deprivation is one "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Also, the length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *See Hutto v. Finney*, 437 U.S. 683, 686-87 (1978) (remarking that "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

To establish deliberate indifference, a plaintiff must plausibly allege that defendants were aware of facts from which they could infer that he faced a substantial risk of harm and that they actually drew that inference. *Farmer*, 511 U.S. at 837.

Plaintiff's brief confinement in u-cell, where he was threatened by swastika-tattooed inmates is lacking in both objective and subjective components. Given the short interlude between plaintiff's being placed in u-cell and his removal from that cell, upon his protest at being confined therein, it is unlikely that he has shown that "the risk of which he complains is not one that today's society chooses to tolerate." Furthermore, there is nothing to establish that that the officers who placed plaintiff in u-cell knew and also drew the inference that plaintiff confronted a substantial risk of harm as a result of that placement. *Id.* Even if the Court assumed the existence of that knowledge and the drawing of that inference, the officers took

reasonable steps to eliminate the risk by moving plaintiff to another cell. *Id.* at 835 36 (finding that a prison official who takes reasonable measures to abate the risk avoids liability, even if the harm ultimately is not averted).

Plaintiff's contentions that he slept on the floor one night, that he was denied cleaning supplies for more than a day, that the shower walls had black mold underneath plastic coverings, that his food was tampered with, and that his breakfast tray and his replacement tray both contained a roach are not the kind of serious deprivations for which the Eighth Amendment provides a remedy. These cited conditions were of brief duration or seemingly were one-time occurrences, and they cannot be said to inflict wanton and unnecessary punishment upon plaintiff. Plaintiff's allegations about these kinds of inconveniences do not rise to the level of constitutional violations. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel.").

As to the allegation that swastikas and other gang-related indicia are on the walls and doors of cells, these depictions are deplorable to some and undoubtedly offensive to society at large, *cf. Hill v. Tilton*, No. 2:07-CV-01449-MMS, 2009 WL 734130, at *4 (E.D. Cal. Mar. 18, 2009) (finding that the admission of evidence of a criminal defendant's tattoos depicting "Nazi symbols and signs and insignia" would likely have negatively prejudiced defendant's jury trial), but they are not prohibited by the Constitution. *See e.g., Cohen v. California*, 403 U.S. 15, 21, 24-25 (1971) (finding that "the form or content of individual expression," including offensive messages, are "matters of taste and style [left] . . . largely to the individual" and an unwilling viewer's exposure to them does not justify their automatic curtailment).

Plaintiff does not assert that the insignia was emblazoned on the walls and doors by the officers, nor that the officers solicited or encouraged the inmates, who are likely the misdirected
10

artists, to inscribe those challenged depictions on the walls and doors, nor that he reported the objectionable insignia to jail officials. At bottom, plaintiff is alleging that the officers neglected to remove the insignia which he found offensive from the walls and the doors of the jail. However, the state of mind required to show an Eighth Amendment violation is deliberate indifference and is not satisfied by an allegation of mere negligence. *See Davis v. Fentress Cnty. Tennessee*, 6 F. App'x 243, 250 (6th Cir. 2001) ("*Farmer* makes it clear that mere negligence is not enough to make out an Eighth Amendment violation.") (citing *Farmer*, 511 U.S. at 835).

The contention regarding correspondence from his attorney (i.e., the letter in which counsel stated that his attempts to visit with his client at the jail were thwarted when officers failed to bring plaintiff out to meet with counsel) are construed to be a claim for interference in the attorney-client relationship.

"[I]nmates must have a reasonable opportunity to seek and receive the assistance of attorneys" and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). To prevail on a § 1983 claim for a violation of the Sixth Amendment, plaintiff must establish: 1) an intrusion into attorney-client communication and 2) some prejudice to him. *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977).

Communication between attorneys and clients is important, but, here, plaintiff has offered nothing to suggest that the actions complained of have resulted in prejudice. Absent some kind of claimed interference with his relationship with his attorney or prejudice to his defense, plaintiff fails to state a § 1983 claim for an infringement of his Sixth Amendment right. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (where prisoner did not contend that a defendant's questioned actions created a barrier to inmate's relationship with his lawyer, he failed to state a

11

cognizable Sixth Amendment claim for a deprivation of his right to counsel) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) for its holding that "[a]s to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting ...")).

Even if the Court assumes, without finding, that black mold on the shower wall sheathed in plastic constitutes a type of grave deprivation which society is unwilling to tolerate, plaintiff has not asserted that he told anyone about the black mold, that it was making him sick, or that any defendant was aware of the black mold and of its effects on plaintiff, which would support an inference that the black mold posed a serious risk of harm to plaintiff and that a defendant actually drew that inference. It would be impossible for a defendant to disregard an excessive risk of serious harm of which he knew nothing. *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."). Thus, plaintiff has not stated a claim in this regard.

Finally, plaintiff's assertion that he had a sore under his nose for a month that was hard to heal likewise fails to state an Eighth Amendment claim. While deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment, *Estelle v. Gamble*, 404 U.S. 97, 104 (1976), plaintiff has not stated sufficient facts to show that the sore constituted a serious medical need nor that he requested medical treatment for his sore but was denied such treatment by a defendant, so as to demonstrate the requisite state of mind of deliberate indifference.

Although this Court is mindful that a *pro se* complaint is to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), it concludes that plaintiff has not alleged the deprivation of any constitutionally protected right, privilege or immunity, and, therefore, the Court finds that

his multiple allegations fail to state claims for relief. 28 U.S.C. § 1915A. Therefore, this action will be **DISMISSED** *sua sponte* for failure to state a claim upon which relief can be granted under § 1983.

In addition to the above, this Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a) and hereby **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous.

A separate judgment will enter.

**ENTER**:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE